# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

PHILLIP LAMONT JONES,

        Petitioner/Defendant,

v.

UNITED STATES OF AMERICA,

        Respondent/Plaintiff.

Case No. CIV-10-351-RAW
(Underlying Case No. CR-06-070)

## ORDER AND OPINION

Before the court is Phillip Lamont Jones' motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence [Docket No. 1] filed September 24, 2010. The Government filed its response on November 15, 2010. Petitioner filed a reply on December 10, 2010. Petitioner's motion is timely.[1]

Additionally, on December 10, 2010, Petitioner filed a motion to strike the Government's response as untimely [Docket No. 8]. The Government responded to that motion on December 23, 2010. Petitioner has not filed a reply.

Per the minute order entered on November 8, 2010, the Government's deadline for filing its response was November 14, 2010. Rule 45(a)(1)(C) of the Federal Rules of Criminal

---

[1] "A one-year period of limitation applies to [a] habeas petition. 28 U.S.C. § 2255. The limitation period runs from the date on which the judgment of conviction becomes final . . . ." United States v. Ramos, 150 Fed.Appx. 752, 753 (10th Cir. 2005) (citations omitted). In this case, the judgment of conviction became final when the Supreme Court denied the petition for a writ of certiorari on October 5, 2009. See Clay v. United States, 537 U.S. 522, 527 (2003); United States v. Prows, 448 F.3d 1223, 1227 (10th Cir. 2006). Petitioner filed his motion on September 24, 2010, within the one-year period of limitation.

Procedure and Rule 6(a)(1)(C) of the Federal Rules of Civil Procedure instruct that when computing a deadline, "include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Since November 14, 2010 was a Sunday, the deadline was the end of the next day, Monday, November 15, 2010; thus, the Government's response was not untimely. Accordingly, Petitioner's motion to strike the Government's response is DENIED.

## THE MOTION

Petitioner raises two grounds for relief in his § 2255 motion. First, he argues that his attorney provided him with ineffective assistance during the plea negotiations and at the change of plea hearing. Specifically, Petitioner argues that: (1) he would not have pled guilty but for the fact that his attorney told him that he would be facing a life sentence if he did not do so; (2) his attorney incorrectly agreed at the plea hearing that the base offense level would be a 32 or 34 with a mandatory minimum sentence of 120 months, when it should have been a base offense level of 16 with a sentencing range of 0 to 20 years; and (3) his attorney failed to inform him that his sentencing range would be affected by counts to which he would not and did not plead guilty since the Government would have a lighter burden of proof on those counts at sentencing.

Second, he argues that he was denied due process because: (1) he pled guilty in front of a Magistrate Judge rather than a District Judge; (2) the Magistrate Judge did not inform him of the consequences of relevant conduct; and (3) statements made by a co-defendant were used against him even though he did not have an opportunity to cross-examine that co-defendant.

## BACKGROUND

On November 16, 2006, an Indictment was filed in this court charging Petitioner with the following five counts: (1) Count Two: aiding and abetting the manufacture of cocaine base or crack cocaine; (2) Count Three: aiding and abetting the manufacture of cocaine base or crack cocaine; (3) Count Four: possession of ecstasy with the intent to distribute; (4) Count Five: possession of firearm in furtherance of a drug trafficking crime; and (5) Count Six: possession of cocaine.[2]

On January 3, 2007, Petitioner appeared before the United States Magistrate Judge and pled guilty to Count Four of the Indictment, possession of Ecstasy with the intent to distribute. Petitioner stated, "Yes, sir," when the Magistrate Judge asked if he made his plea of guilty "voluntarily and completely of [his] own free choice." See Transcript, Plea Hearing, page 25. The Government later filed a notice of dismissal of Counts Two, Three, Five and Six against Petitioner.

During the change of plea hearing, the Magistrate Judge informed Petitioner that he had the right to have his plea taken before a United States District Judge, that he had the right to a jury trial on the charges against him before a United States District Judge, and that even if he decided to enter his plea before the Magistrate Judge, he would be sentenced by a United States District Judge. Petitioner said that he understood those rights and wished to enter his plea before the Magistrate Judge. See Transcript, Plea Hearing, pages 2-3.

On the same day, January 3, 2007, Petitioner's signed Consent to Proceed Before United States Magistrate Judge for a Change of Plea was entered in his criminal action. That consent

---

[2]Petitioner was not charged in Count One of the Indictment.

form included the following language:

> The United States Magistrate Judge has explained to me the nature of the offense(s) with which I am charged and the maximum possible penalties which might be imposed if I am found guilty. The magistrate judge has informed me of my right to the assistance of legal counsel. The magistrate judge has also informed me of my right to trial, judgment, and sentencing before a United States District Judge.

Also included in that consent was the following statement, just above Petitioner's signature:

> I HEREBY: Waive (give up) my right to trial before a United States District Judge and I consent to enter a plea before a United States Magistrate Judge and I understand I will be sentenced by a United States District Judge.

Also entered on January 3, 2007, was Petitioner's signed Waiver of Jury.

During the change of plea hearing, the Government stated and the Magistrate Judge informed Petitioner again that Count 4 was punishable by a term of imprisonment of not more than 20 years, a fine of up to one million dollars, supervised release of at least three years, and a mandatory special assessment of one hundred dollars. The Magistrate Judge asked Petitioner if he fully understood both the charges against him and the punishment for those charges, and Petitioner answered "Yes, sir." See Transcript, Plea Hearing, pages 7-8 and 18-20.

The Magistrate Judge went on to explain the possibilities upon a revocation of supervised release and ultimately informed Petitioner that his "maximum exposure then, less any financial sanctions, is up to life imprisonment" or "life in the criminal justice system." See Transcript, Plea Hearing, pages 9 and 20.

The Government further noted that the base offense level was 32, 34 or 36, and Petitioner's attorney agreed. The Petitioner answered, "Yes, sir," to the Magistrate Judge's questions regarding whether he had discussed the Sentencing Guidelines with his attorney and

4

understood.  See Transcript, Plea Hearing, pages 9-11 and 20-21.

After explaining to Petitioner his trial rights and Petitioner agreeing that he understood, the Magistrate Judge also asked Petitioner: "Do you understand if the court accepts your plea of guilty, the court may impose the same punishment as if you'd pled not guilty, stood trial, and been convicted?" Petitioner answered, "Yes, sir." See Transcript, Plea Hearing, page 24.  The Magistrate Judge also informed Petitioner that the sentencing judge must consider, but is not required to follow the Sentencing Guidelines.  See Transcript, Plea Hearing, pages 10 and 21.

Additionally, the Magistrate Judge informed Petitioner that at trial, he would have the right, *inter alia*, to see, hear and cross-examine all witnesses called to testify against him.  See Transcript, Plea Hearing, pages 22-23.  Petitioner answered that he understood his trial rights. See Transcript, Plea Hearing, pages 23-24.  Petitioner then answered that he understood that if he pled guilty, he would be giving up his right to a trial.  See Transcript, Plea Hearing, page 24.

Before concluding the change of plea hearing, the Magistrate Judge also asked Petitioner if he was satisfied with Mr. Wright's services, to which Petitioner answered, "Yes, sir."  See Transcript, Plea Hearing, page 27.

Following Petitioner's guilty plea, he was to be sentenced on May 17, 2007.  On that day, Petitioner and his attorney, John Wright, informed the court that Petitioner wished to retain new counsel.  The court reset Petitioner's sentencing for June 7, 2007.  Despite his former desire to retain new counsel, Petitioner appeared for his sentencing on June 7, 2007 with the same attorney, John Wright.

On June 7, 2007, Petitioner was sentenced on Count Four of the Indictment to the custody of the Bureau of Prisons for a term of 180 months, followed by supervised release for a term of

36 months. He was also fined a special assessment of one hundred dollars. The Judgment was entered on June 12, 2007.

Two days later, on June 14, 2007, Petitioner filed a *pro se* motion to withdraw his guilty plea. The court denied Petitioner's motion, noting that Federal Rule of Criminal Procedure 11(e) states: "After the court imposes sentence, the defendant may not withdraw a plea of guilty or *nolo contendre*, and the plea may be set aside only on direct appeal or collateral attack."

On June 22, 2007, Petitioner's attorney, John Wright, filed a notice of appeal on Petitioner's behalf. Thereafter, however, Petitioner was represented by new counsel. On appeal, Petitioner argued that: (1) the Due Process Clause mandated that this court apply a higher standard of proof than preponderance of evidence in considering the additional drugs at his sentencing; (2) this court misinterpreted the Sentencing Guidelines and improperly attributed drugs to him that were not relevant to the offense to which he pled guilty; and (3) this court lacked sufficient evidence to support attribution of all the additional drugs.

In a Decision entered in this action on April 29, 2009, the Tenth Circuit affirmed Petitioner's sentence on appeal. Petitioner filed a petition for a writ of certiorari on July 6, 2009. That petition was denied by the Supreme Court of the United States on October 5, 2009.

## ANALYSIS

Title 28 U.S.C. § 2255 provides: "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." As explained below, the

court finds that the files and records of the case conclusively show that Petitioner is entitled to no relief; thus the § 2255 motion is DENIED.

## I.    Ground One Arguments – Ineffective Assistance of Counsel

In order to prevail on his claims of ineffective assistance of counsel, Petitioner must satisfy the two-prong test set out in Strickland v. Washington, 466 U.S. 668 (1984). Under this test, Petitioner must show both that his counsel's performance was deficient and that the deficiency prejudiced his defense. Id. at 687.

In other words, he must first show that his counsel's "representation fell below an objective standard of reasonableness." Id. at 688. "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.

A reviewing court must make every effort "to evaluate the conduct from counsel's perspective at the time." Id. Moreover, a convicted defendant "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. (citation omitted). "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." Id.

If Petitioner gets past the first hurdle, he must then show that the error had an effect on the judgment in his case. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the

7

judgment." Id. at 691. Even if an error had some conceivable effect, that is not enough to set aside a judgment. Id. at 693. Instead, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

## A.      Petitioner's First Ground One Argument

Petitioner first argues that he was denied effective assistance of counsel because he would not have pled guilty if his attorney had not told him that he would be facing a life sentence otherwise. The Tenth Circuit has held that "[a] miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel. United States v. Gordon, 4 F.3d 1567, 1570-71 (10th Cir. 1993).

Moreover, Petitioner has failed to establish that he suffered any prejudice from any inaccurate sentence prediction. At his change of plea hearing, Petitioner was fully advised by the Magistrate Judge of the charges and the possible penalties. The Magistrate Judge also explained to Petitioner that the sentencing judge could impose the same sentence as if he had not pled guilty, stood trial and been convicted. Petitioner stated that he understood. Petitioner still chose to plead guilty. Given that all of this was explained to him, any argument by Petitioner that he would not have pled guilty if his attorney had not told him he was facing a life sentence otherwise is insufficient to establish prejudice.

Additionally, the United States Supreme Court has "strictly limited the circumstances under which a guilty plea may be attacked on collateral review." Bousley v. United States, 523 U.S. 614, 621 (1998). "It is well settled that a voluntary and intelligent plea of guilty made by an

accused person, who has been advised by competent counsel, may not be collaterally attacked." Id. (quoting Mabry v. Johnson, 467 U.S. 504, 508 (1984)). Moreover, "the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review. Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." Id. (quotation marks and citation omitted).

A guilty plea effectively forecloses his collateral attacks. The Supreme Court has explained:

> A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence. Accordingly, when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary. If the answer is in the affirmative then the conviction and the plea, as a general rule, foreclose the collateral attack. There are exceptions where on the fact of the record the court had no power to enter the conviction or impose the sentence.

United States v. Broce, 488 U.S. 563, 569 (1989).

The Tenth Circuit has expounded: "[a]n exception to the rule barring collateral attacks on guilty pleas exists when the defendant claims he had 'the right not to be haled into court at all upon the felony charge.'" United States v. Means, 297 Fed.Appx. 755, 758 (10th Cir. 2008) (citations omitted).

Here, Petitioner did not challenge his guilty plea on direct review. Additionally, none of Petitioner's § 2255 arguments meet the exceptions. Defendant does not claim innocence or that he had the right not to be haled into court at all.

Petitioner has not demonstrated cause for his failure to raise this issue on direct appeal. As the Supreme Court has explained, this claim could have been "fully and completely addressed

on direct review based on the record created at the plea colloquy." Bousely, 523 U.S. at 622. The court finds that Petitioner made a voluntary and intelligent guilty plea while being advised by competent counsel; thus his plea may not be collaterally attacked and his § 2255 motion must be DENIED on this ground.

**B.       Petitioner's Second Ground One Argument**

Next, Petitioner argues that he was denied effective assistance of counsel because his attorney incorrectly agreed at the plea hearing to the base offense level of 32 or 34 with a mandatory minimum sentence of 120 months. He states that the base offense level should have been 16 with a sentencing range of 0 to 20 years. In his Reply titled, "Petitioner's Traverse to the Respondent's Response," however, Petitioner states that he "agrees that the District Court apllied (sic) the correct sentence." Effectively, he abandons this argument.

Moreover, Petitioner already argued on appeal that the court misinterpreted the Sentencing Guidelines. The Tenth Circuit ruled that the Sentencing Guidelines were properly applied. Accordingly, Petitioner's motion is DENIED as to this argument.

**C.       Petitioner's Third Ground One Argument**

Finally, Petitioner argues that he was denied effective assistance of counsel because his attorney did not inform him that his sentencing range would be affected by counts to which he would not and did not plead and that the Government would have a lighter burden of proof on those counts at sentencing. This argument is largely a restatement of his first – that but for his attorney's incorrect advice or lack of advice regarding his sentence, he would not have pled guilty – and will be denied for the same reasons.

The court again notes that Petitioner was thoroughly informed at his change of plea

10

hearing about his sentencing range. When asked whether he had discussed with his attorney the possible sentencing range, he answered that he had. When asked whether he understood the possible sentencing range, he answered that he did. Petitioner was also informed that the sentencing judge must consider, but is not required to follow the Sentencing Guidelines.

Petitioner was ultimately sentenced within the range given at his change of plea hearing. Petitioner also informed the Magistrate Judge at his change of plea hearing that he was satisfied with his attorney's services. He has not established that he suffered any prejudice. More importantly, he did not bring this argument on direct review, and thus, cannot now bring it on collateral review. Therefore, this argument also fails. Petitioner's motion is DENIED as to this argument.

## II.    Ground Two Arguments – Denial of Due Process Rights

Petitioner argues that he was denied due process because: (1) he pled guilty in front of a Magistrate Judge rather than a District Judge; (2) the Magistrate Judge did not inform him of the consequences of relevant conduct; and (3) statements made by a co-defendant were used against him even though he did not have an opportunity to cross-examine that co-defendant.

"A defendant's failure to present an issue on direct appeal bars him from raising the issue in his § 2255 motion, unless he can show cause excusing his procedural default and actual prejudice resulting from the errors of which he complains, or can show that a fundamental miscarriage of justice will occur if his claim is not addressed." United States v. Cook, 997 F.2d 1312, 1320 (10th Cir. 1993). Petitioner did not raise these issues on direct appeal. Moreover, he has not shown cause excusing his procedural default, actual prejudice resulting from these alleged errors, or that a fundamental miscarriage of justice will occur if these claims are not

addressed.

Petitioner's due process arguments are procedurally barred and thus, DENIED.
Nevertheless, the court will address each argument in turn.

## A.     Petitioner's First Ground Two Argument

First, Petitioner argues that he was denied due process because he pled guilty in front of a
Magistrate Judge rather than a District Judge. At Petitioner's change of plea hearing, the
Magistrate Judge informed him that he had the right to enter his change of plea before a United
States District Judge. Petitioner stated that he understood that right and wished to enter his plea
before the Magistrate Judge. He was not denied due process.

## B.     Petitioner's Second Ground Two Argument

Next, Petitioner argues that he was denied due process because the Magistrate Judge did
not inform him of the consequences of relevant conduct. The Magistrate Judge fully informed
Petitioner more than once about the possible sentencing range. Petitioner was sentenced within
that range. He was not denied due process.

## C.     Petitioner's Third Ground Two Argument

Finally, Petitioner argues that he was denied due process because statements made by a
co-defendant were used against him at sentencing even though he did not have an opportunity to
cross-examine that co-defendant. The Magistrate Judge explained at Petitioner's change of plea
hearing, and Petitioner stated that he understood, that he was giving up his right to a trial.
Petitioner also understood that one of his trial rights was to cross-examine witnesses. He still
chose to plead guilty. He was not denied due process.

## CONCLUSION

The Petitioner's motion to strike the Government's response [Docket No. 8] is DENIED.

The Petitioner's § 2255 motion [Docket No. 1] is also DENIED.

It is so Ordered this ___*3/*___ day of March, 2011.

_____
**HONORABLE RONALD A. WHITE**
**UNITED STATES DISTRICT JUDGE**
**EASTERN DISTRICT OF OKLAHOMA**